Good morning, Your Honors. May it please the Court, I would like to reserve five minutes for rebuttal. I would like to address three errors by the Board, each warranting that the Board's decision be vacated if not reversed and remanded. First, I will address our challenge to the Board's constructions of the claim control limitation of Claim 1 and the similar limitations in Method Claims 8 and 14, which this Court reviews de novo. In its claim construction section of the final written decision, the Board impermissibly imported a limitation that Claim 1 requires that the instructions take into consideration the battery level in some manner when operating the climate control mechanism. It went on to state that specifically the instructions that operate the climate control mechanism must take into account the predetermined battery level and the claimed instructions must be based in some manner on the predetermined battery level, and this construction was an error. The Claim 1 itself does not recite any requirement that the instructions for operating the climate control mechanism take into account any battery level or for any consideration of the battery level in the course of operating the climate control mechanism, nor is it disclosed anywhere in the very limited disclosure in the specification. Instead, the claim merely requires that the climate control mechanism is operated until the amount of charge residing in the battery reaches this predetermined level by whatever means, which could be by other instructions controlling other aspects of the system, not necessarily by the claim climate control mechanism. For example, the climate control mechanism could operate just so long as electricity is powering it, just like in a gas vehicle. The engine will run and operate the AC so long as the gas is powering the engine. The engine itself does not need to take into consideration the gas level. The driver, either with an electric vehicle with a claimed invention or in a gas vehicle, is assured that the climate control mechanism, such as AC, will continue running until a predetermined level of energy, whether gas or electricity, is reached, and that's the point of the claim control limitation and why it's not meaningless. As the board noted at Appendix 4, the 135 patent sets forth a system where a user may safely leave a pet in a parked vehicle by establishing and or setting charging parameters designed to keep the air conditioning on to maintain a cool vehicle and to keep the heat on to maintain a warm vehicle. The Intel requirement thus doesn't require that it's the climate control mechanism itself that is considering the predetermined battery threshold so long as the climate control mechanism continues to run until that level is met. And without it, without this assurance, the user could leave the vehicle and not know whether the AC will continue to run for one minute or two minutes or until it actually meets the predetermined level. And this is important because it gives the assurance to the driver and allows for many possibilities. For example, the driver could monitor the user interface on the mobile device required in Limitation 1B to see when the predetermined threshold is met and then decide whether to return to the vehicle or continue charging. It's also possible that the driver is provided a notification as required by Dependent Claim 15 but not Claim 1, just like a low gas light comes on in a gas vehicle, but it doesn't have to be the instructions operating the climate control mechanism or AC. You're looking at figure six, right? Is that what you're talking about? Where the devices is on the PET mode? Right. So one possibility after, but it's not required by the claim, but one possibility after the battery charge level reaches the predetermined level is that the user could be notified that there is a specific amount that the charge is limited and that you have to make a decision at that point of what to do next. But nothing's required to happen next. But my point is that it's giving the claim meaning. I guess I'm a little confused as to why you're going through all these different examples of possibilities of what can happen next after the battery goes down to a certain level. I mean, you're speaking of, you're giving examples of what would satisfy the board's constructions of taking into account the predetermined charge level. But if your position is correct, you don't have to take into account anything next in this claim. So there's no need to be going through all these different possibilities that you're identifying. These examples are to show why the claim has meaning even without the instructions operating the climate control mechanism being what considers or takes into account the predetermined level. I thought your position was all that is required by this claim is very little. The air conditioning has to remain on up until the point the battery goes down to a particular predetermined level. And that's it. That's true. And then everything you're talking about is what could possibly happen after that. And none of that matters according to your position in the claim, right? That's true. I'm giving these examples to show why it's important that the user has the assurance that the battery will be maintained at least until it gets to that level. But I hear your point and I can move on to my next point. But it's the board. So the board required that it's not just any instructions are taking into account the predetermined battery level. It's the instructions that operate the climate control mechanism that takes into consideration the predetermined battery level. And my point is it doesn't have to be those instructions that are operating the climate control mechanism. It could be some other aspect of the system. It could be a user. But it doesn't have to be those specific instructions. Could we talk about claims 8 and 14? For example, on claim 8, I'm having difficulty seeing where the threshold amount of time limitation is satisfied. For the board's construction does require, and we believe in error, that a specific time calculation is made. And if you look at the claim language, it's until it is determined for example for 8, until it is determined that the selected mode of operation cannot be maintained by the amount of charge residing in the battery for more than a threshold amount of time. It's an undefined threshold amount of time. And what's important and what's disclosed in the specification is the threshold battery level. And before we get to that point, also even though it's not an explicit claim construction in the claim construction section as with claim 1, the board carried through that requirement that it's the instructions operating the climate control mechanism that take into account that predetermined level, which is improper, especially in the method claims where instructions are not part of a claim limitation. Can I have you try again? I mean, let's just say right now that I understand this claim limitation in claim 8 as requiring some instructions, or there's no instructions. You've just got to keep the air conditioning on until a certain point when it is determined that there's only a certain amount of time left before the battery is going to run out. And so now it's a little bit of a race against the clock to get back to the car before your pet overheats inside the car. That's a wrong understanding of the claim? Well, the claim is focused on determining the remaining charge that will allow the climate control mechanism to operate for some undefined threshold amount of time. And that threshold amount of time is not disclosed in the patent claims or specifications. But the concept of it's related to time, that there's an amount of time remaining that you can keep the air conditioning on. So, if your honors agree that there is a requirement that there's an actual determination of time, which we disagree with, then... You lose. Say again? You lose. No. No, your honor. I would say, if there's any aspect of the board's claims instruction... What reference is it? It's Hibby? Hibby. Hibby is the prior art reference? Yes. So, to what extent does Hibby disclose this concept of keeping the air conditioning on until there's only a set amount of time left that you can keep the air conditioning on? So, in Hibby, it discloses this about the volt meter requiring a predetermined level of charge below which the battery would be considered low. And it is a method claim, so Hibby isn't required to, assuming that it's required, that an actual amount of time is determined. It doesn't have to be the system itself. And our expert provided testimony that was not considered or discussed by the board at all, that said that a person of ordinary skill and the art would know that you take that threshold amount of battery, divide it by the charge usage, and you come up with the threshold time limit that's left for the climate control mechanism to operate. And that wasn't addressed by the board. But we don't know the so-called discharge rate that's occurring inside the car, so we can't necessarily, in Hibby, as far as I can tell, translate that battery level reading into an amount of time left that you can keep the air conditioning on. I mean, there's a gap in what's going on here. I mean, if in fact this claim requires some kind of determination that there's going to be a set amount of time remaining that the AC can stay on, Hibby doesn't speak to that. And the fact that you might be able to convert the low battery level reading in Hibby into an amount of time, Hibby doesn't contemplate that, nor does it contemplate or express how you would go about getting the discharge rate inside of any car. Well, that's what our expert addressed. I mean, that sounds like an obvious modification theory, not necessarily that Hibby is disclosing and contemplating this very fact. Well, Tesla's expert gave testimony that a person of ordinary skill in the art would be able to make that calculation based on using the Hibby system. That testimony was not set forth in particular to this board's claim construction, because this was a claim construction that first came out in the final written decision. But he nonetheless gave testimony that was not considered and was an error by the board by not addressing it in the final written decision, that a person of ordinary skill in the art would be able to make that calculation. But it's not to say that the record wouldn't benefit from additional testimony from an expert on this claim construction that was new in the final written decision and thus was an error. So my point would be if your honors disagree with any aspect of the board's construction that was only first disclosed to the parties in the final written decision, it should be vacated and remanded. For example, the carryover from Claim 1, that is the climate control mechanism that's considering the predetermined battery level, is an error, and for that reason it should be remanded. But also, the fact that the board determined claim construction in the final written decision without giving the opportunity to the parties to address that claim construction is a violation of the APA, and it's pretty clear, in our opinion. Well, maybe the board, once again, just did plain and ordinary meaning. Well, so, I would... You saw the threshold amount of time in the claim and said, where's the threshold amount of time consideration, and maybe I don't see it. Well, so it's both, the threshold amount of time as well as this correlation between the climate control mechanism taking into consideration that predetermined level. I will note that if the board construes the claim, even if it's giving additional meaning that it claims to be plain and ordinary meaning, if it is different from what the parties understand or what the claim term words it means, I would say that's claim construction, because it's defining the scope of the claim. And I will note that Charge Fusion also understood the claim to not require that the system calculate a specific charge, a specific time left to run the climate control mechanism, and its infringement contentions, it mapped this Claim 8 to a portion of, to, sorry, to Tesla's Model 3, just disclosing the percent of battery left. So in its mapping, it did not identify anywhere in Tesla's vehicle that a time allotment was required, that an actual calculation of the time remaining is required. So they understood it the same as we did. The board construed it differently. So even if they're claiming that's the plain and ordinary meaning, we disagree. So for that reason, both aspects of the claim construction was incorrect, and the decision should be vacated and remanded for further proceedings. And I see I'm almost out of time, but I'll just say the last point which I mentioned is that the board did not consider Tesla's expert testimony. It did credit Tesla's expert testimony with the level of the person of ordinary skill in the art, but then didn't address any of its discussion of what a person of ordinary skill in the art would understand, and that's an error. Charge Fusion speculates that that's because the board discredited the testimony, but there's  I think we're out of time. Thank you. Thank you. We'll give you a few minutes for rebuttal. Mr. Little? Good morning, Your Honors. Brad Little on behalf of the appellee. May it please the court. I want to start with Tesla's proposal is basically trying to remove any correlation between operating the climate control mechanism. Which claim are you talking about? I'm talking about 1, 8, and 14. They're trying to remove any correlation between, and I'll start big picture, then we can focus in on each individual claim, but they're trying to remove any correlation between the climate control mechanism and the battery level, or the threshold of time that the battery has left in order to operate the AC mechanism, and this is because if you look at figure I'm not understanding. Hibby shows action based on battery charge level, right? So what Hibby does, and I'm looking at figure 5, and it's appendix 300, and what they're really relying on is just this figure 5. That's clear from the record. And what Hibby does is it goes into an in-vehicle abnormality processing mode, and all it does with a voltmeter is detect that there's a low battery, and in response to that low battery, all it does is start the engine to basically make sure the battery doesn't die. It has nothing to do with the climate control mechanism. It has nothing to do with the AC. So if you look here on this chart, when it reaches the low battery, it confirms that the gear is in neutral, it starts the engine, and it charges the battery, and the apparatus it uses is the engine starter. You mean the operation is separate from the climate control mechanism? That's your argument? It's absolutely separate from the climate control mechanism, and that's what the board found as well. The board weighed all the evidence, including expert testimony on behalf of Petitioner, and said it's undisputed, they actually said the words, it's undisputed that there is no correlation between the climate control mechanism... If it is part of the climate control mechanism, the claim limitation in one is satisfied. I'm sorry, say that again? If it is part of the climate control mechanism, then claim one is satisfied by DB. Well, I would dispute that as well. I would say that if it, just because it detects that there's a low battery is different than what the claim says, which is reaches a predetermined level. So low battery is not predetermined, it just means it's a low battery, and I think the board rejected this notion that a voltmeter could detect... I don't understand why low, once you hit a signal that the battery has reached a low battery level, and then therefore the car takes certain action. Why that doesn't count as a predetermined level of charge? I mean, I guess if you want to... See, those are right in line with each other. If you want to expand it broadly to take a broad, expansive view of Hibby, sure, but there's no instructions that operate the climate control mechanism to say that when it reaches that predetermined level, it's going to do anything. Well, that goes to a more fundamental question that I want to ask you, which is, why does this claim require anything to happen once a predetermined level is reached in the battery? That is to say, perhaps all that is required by this claim limitation, and we're talking about Claim 1 right now only, that the air conditioning has to remain on until the battery reaches some predetermined level, and that's it. But once the predetermined level occurs, then the claim is completely open. It says nothing. There's no further limitation. And so that's why I'm concerned about the board's construction, that after the predetermined level is made, the claim still requires, I don't know, the system to somehow take into account that this predetermined level has been hit. I don't think the board... I think the board recognized that it's open, that it's broad enough, and that it didn't so much matter what happened after it hits the predetermined time. The board... It seems to say that maybe the operation of the air conditioning can cease, although that's not required, or it can be altered, or a notification could be sent to the owner's phone. But nevertheless, something to the board needed to happen once that predetermined level was hit, and I don't see why that is so based on the actual language. I mean, that could have been written into the claim, and the claim almost suggests that there's a limitation missing because the claim could have, maybe should have said, oh, and then once the predetermined level is hit, take certain action, but the claim stops before it gets to that. So if all that is required is you got to keep the air conditioning on until some predetermined level is reached, I don't see why HIBBY doesn't disclose that when it discloses that you have the air conditioning on up until you get a low battery readout from the voltmeter. Well, respectfully, Your Honor, I don't think that's what HIBBY discloses. It doesn't say discontinue or change or modify. No, it doesn't need to say discontinue for purposes of matching up with this claim limitation. All it needs to say is keeping the air conditioning on until the low battery readout is made by the voltmeter. But it doesn't even say that, Your Honor. It doesn't even say that. It says once you get to the low battery notification, that's sense. Now you're disagreeing that the whole point of HIBBY is you want to protect the pet inside the car, and you want to keep the air conditioning on, and even when you get to the low battery level, you still want to save the pet. So what you do, you go into abnormality mode, and then you turn on the car so you can charge the car, so you can keep the AC going. You're really questioning right now whether HIBBY discloses keeping the air conditioning on up until the low battery level is met? I am, yes, Your Honor. HIBBY does not say that. Okay, what if we disagree with you on that? What else do you have for us on Claim 1? Well, I think that Claim 1, I think what the board said in its claim construction was that the instructions are key to this issue, right? So the instructions have to take into consideration the predetermined battery level when it's operating the climate control mechanism. And HIBBY just does not have that. Well, I don't even know what that means, take into consideration. That's incredibly vague. It's practically an indefinite claim construction. Well, I think it just means that the preamble of the claim is similar to the last case we just heard, which is that there's instructions that cause a processor to do and there's certain steps that it recites. And at the end in this Claim 1H, it says you have to operate the climate control mechanism until a certain point, and that certain point is when a predetermined battery level is reached. We all agree on that. And that's it. Period. That's all that's required by this claim limitation. Yes. And I think the board got it right when it said you must take into account. No, that's extra. Now that's adding a little window dressing on top of what the claim actually requires. The claim doesn't say you must take into account. It just says you've got to keep the AC on until you reach a certain point. Yeah, which is a predetermined battery level. Yes, Your Honor. What about claims 8 and 14? So 8 and 14 are a little more specific. So claims 8 and 14 go sort of, you know, become a little more narrow than Claim 1 and say that, you know, you must know sort of a specific relationship between the remaining level of charge in the battery and the amount of time the climate control mechanism can run on that remaining charge. And so I think, you know, if we're looking at what Hibby discloses, again, we're going back to the substantial evidence standard here. The board weighed all of the evidence presented and found that the Hibby's in-vehicle abnormality processing mode simply starts the engine. It has nothing to do with the climate control mechanism. It says it operated those things independently. And so based on that, we think there's no—Hibby does not render obvious this claim. You're not relying on the threshold amount of time language? Yes, Your Honor, in Claims 8 we are. It's in 14, too. Claim 8 and 14, we are relying on threshold amount of time, yes. The other side says they were surprised by the board's final written decision. Yes, I understand that. So regarding surprise or an unexpected claim construction, you know, in the institution decision, the board encouraged the parties to address these specific items, the scope and the limitations surrounding these predetermined time and whether Hibby—what Hibby does in response to it having this low battery indication. And so I don't understand the surprise. In response to that, Pat Noehner in his response argued that, you know, it would have to cease operation after this time, and Tesla responded to that, said it could cease or change. Ultimately, the board said it didn't matter, as our discussion earlier, but it's hard to understand why they're surprised when there was notice and opportunity to address these exact limitations. They went with Plain and Ordinary Meeting on the claims. So, and I think what the board is doing here, they're not importing any sort of limitations. They're just literally looking at the explicit limitations that are in Claim 1, 8, and 14 and applying the Plain and Ordinary Meeting. Finally, the other side said something about their expert saying something along the lines of, oh, once Hibby knows the low battery level, that necessarily translates into a certain amount of time before the battery runs out of charge. Yeah, I think that, I think what we said in our brief is correct. We, I think the board considered that. I think that there was also some testimony during cross-examination of the expert that sort of supported our position that Hibby does not disclose these limitations. He said that basically the temperature is just maintained. He doesn't know what happens to it or it's independent of what the battery level and the climate control mechanism. Let me find the site for that for you. Well, I'll find that. Oh, it was Tesla's, we say this on our response, 43 through 44, Tesla's own expert testified Where in the JA is this? 1335 through 1336 in the appendix. And we say Tesla's expert also acknowledged that Hibby's temperature would be maintained in the event that if the battery reaches a predetermined level because nothing changes in the selected operation of the climate control mechanism. So here we have an admission from Tesla's expert that these two things operate independently. And again, I think this is supported by figure five in the appendix 300, which shows what Hibby actually discloses. And again, it's independent of the climate control mechanism, this low battery indication and what Hibby's response to that, which is simply just to start the engine to charge the battery. So if there's no other questions, I'll see the rest of my time. Okay. Thank you. Ms. Carter, you've got two minutes. Thank you, Your Honor. I just quickly would like to address a couple of the points. The first is charge fusion claims is undisputed, agrees with the board that it was undisputed that Hibby doesn't take into account the predetermined battery level. But that was an error because the board didn't consider at all any of Tesla's expert testimony. It didn't discredit it. It didn't say we weighed the evidence and there's no serious dispute. They just said it's undisputed. So very clearly did not consider or take in or weigh the evidence as charge fusion claims. But they also overstate the board's institution decision with regards to claim construction. The only issue that the board asked for briefing on was whether or not anything was required to happen after the until. So did the operation need to cease? Did it need to change? That's the only issue, binary question. And that's the testimony, that expert testimony that charge fusion cites to is only directed to that issue, nothing else. So it's not relevant to what even the board actually determined to be the correct claim construction. Those were the two points I wanted to address. But if your honors have any further questions. Okay. Thank you. Thank both counsel. The case is submitted.